**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **P&RO SOLUTIONS GROUP, INC.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 6:16-CV-00095-RWS** |
| **v.** | § | |
| | § | |
| **CIM MAINTENANCE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

This Memorandum Opinion construes the disputed claim terms in United States Patent No. 8,209,205 ("the '205 Patent"). Also before the Court is Defendant CiM Maintenance, Inc.'s ("CiM") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101 (Docket No. 7). The Court held a *Markman* hearing on February 14, 2017 (Docket No. 60), and heard argument on CiM's motion to dismiss on March 6, 2017 (Docket No. 72). For the reasons discussed below, the Court resolves the claim-construction disputes as stated below and **GRANTS** CiM's Motion to Dismiss (Docket No. 7).

## BACKGROUND

Plaintiff P&RO Solutions Group, Inc. ("P&RO") alleges that CiM infringes the '205 Patent. Docket No. 1 at 4. The '205 Patent, entitled "Planning and Scheduling Tool Assistant Assuring High Utilization of Resources," issued on June 26, 2012 from an application filed May 24, 2004, which claims priority to provisional applications dated May 22, 2003 and June 30, 2003. The '205 Patent generally relates to computerized planning and scheduling programs. The Abstract provides:

Schedulers, Planners, and Maintenance Supervisors in an Industrial facility can use the user interface of the present invention to extremely quickly move work order schedules, status planning, and manage resources. Additionally, key performance indicators or metrics on performance on how well the organization is doing is also cumbersome if not impossible in the current practice in these industrial organizations. The variables of this management include worker, crew, Work Order, Dates, Planning Status, planner, dates, etc. (see tech manual and summary sheets). The invention operates by interfacing with the Computerized Maintenance Management System (CMMS) database in a thoroughly interactive process. The local program constructs a parallel database and reads and feedbacks to the CMMS database frequently to stay current and accurate.

'205 Patent Abstract.

The specification describes a scheduling system in which a computerized user interface is provided for a user to schedule work orders, such as "repair pump." *Id.* at Figures 1–2, 5:50–56, 1:20–34. Scheduled jobs and unscheduled jobs are provided in lists that are grouped by work week. *Id.* at 2:53–55. A user may use a mouse to drag and drop unscheduled jobs to a desired work week. *Id.* The system is described as allowing quick movement of work orders, status planning and management of resources. *Id.* at 2:25–30. As work orders are moved, real-time indication of resource loading is visible so that the schedulers will know they have not overloaded a particular work group. *Id.* at 2:53–63. Performance indicators and metrics for the organization are also provided. *Id.* at 2:31–35.

The '205 Patent also explains that, in the prior art, Computerized Maintenance Management Systems ("CMMS") were used to implement work orders in an industrial environment, but those prior art CMMS systems were inefficient. '205 Patent at 1:35–41.

## CLAIM CONSTRUCTION

### APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts first consider the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.' " *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). A term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.' " *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' " *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, " [a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.' " *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic

evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* The Supreme Court recently explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## ANALYSIS

At issue are claim terms from claim 1 of the '205 Patent. On February 14, 2017, prior to the claim-construction hearing, the Court circulated preliminary claim constructions indicating where it stood after considering the claim-construction briefing. The Court instructed the parties that it might change its constructions based upon the parties' arguments at the hearing. Docket No. 64 at 2:24–3:10 ("*Markman* Hr'g Tr.").

### I.   Agreed Term

Based on the Court's preliminary claim constructions, the parties reached an agreement with respect to the term "work week sections." *Markman* Hr'g Tr. at 6:14–2, 12:1–13:17.

| Claim Terms | Agreed Claim Construction |
|---|---|
| "work week sections" | "a plurality of portions of a user interface, each portion being a grouping of the days of a given week during which work takes place" |

In view of the parties' agreement on the proper construction of this term, the Court **ADOPTS** this construction.

## II. Disputed Terms

### i. "dragging and dropping the work orders"

| P&RO's Proposed Construction | CiM's Proposed Construction |
|---|---|
| "moving a graphical representation of work orders, resulting in a recalculation of relationally linked data" | Plain and ordinary meaning |

P&RO states that the claim describes "dragging and dropping the work orders" rather than generically "dragging and dropping," and thus, the term must be interpreted consistent with the specification rather than being given its plain and ordinary meaning. Docket No. 45 at 3–4. P&RO argues that the dragging and dropping of work orders is applied in the specification to "construct[] a parallel database and reads and feedbacks to the CMMS database frequently to stay current and accurate." *Id*. at 4 (quoting the '205 Patent at 2:44–46). P&RO contends that CiM's proposed generic interpretation of dragging and dropping does not result in either the construction of a parallel database or feedback to the CMMS database, both of which P&RO states are required by the specification. *Id*. P&RO also argues that the specification requires extensive recalculation of data linked to work orders, because only with such recalculation can the system accurately sync and feedback to the CMMS database. *Id*. at 4.

P&RO further states that source code of a software program embodying the invention was filed with the provisional parent application of the '205 Patent. *Id*. at 4–5. P&RO contends that decompiling this file shows the actual operations that occur when a user drags and drops a work order. *Id* at 5. Specifically, P&RO contends that recalculation of various related values, including recalculation of an entire work week, occurs when work orders are dragged and dropped into a week. *Id*. P&RO's expert states:

> It would not make any sense for a user to drag and drop data, for the purpose of modifying a work schedule, without that action affecting the values of variables stored in the relational database tables that describe the work schedule. In

particular, without such recalculations, it would be impossible to implement the functionality of the claims, which include providing metrics about the work schedule.

Docket No. 45-1 at ¶ 27 ("Sherman Delcaration").

P&RO finally contends that the specification distinguishes generic dragging and dropping, as referenced in the prior-art *Borg* reference, which disclosed a manufacturing scheduling program that included a drag and drop feature, from the dragging and dropping here, which "allows Work Orders to be assigned into a scheduled work week where the intent is to measure the performance of the work team executing the work week." Docket No. 45 at 6 (citing the '205 Patent at 3:43–46). Thus, P&RO argues that including the requirement that the dragging and dropping of work orders must include recalculation of relationally linked data is consistent with the intrinsic evidence. *Id.*

In response, CiM argues that "[t]here is no need to read limitations rooted in source code appendices into this claim. Docket No. 48 at 3. CiM states that P&RO has not cited to any intrinsic evidence indicating clear intent, by the patentee, to deviate from the ordinary meaning. *Id.* CiM contends that P&RO's expert acknowledged that "drag and drop" has a commonly understood meaning to a person skilled in the art. *Id.* (citing Sherman Declaration at ¶ 22). CiM further notes that P&RO's expert's declaration states that "a dragging and dropping action can (and typically does) change a value in a relationally linked data." *Id.* at 4 (citing Sherman Declaration at ¶ 25). CiM argues that the expert's use of the word "can" leaves open the possibility that recalculation might not result upon dragging and dropping and contends that the expert agreed that dragging and dropping does not require recalculating relationally linked data:

> Q. … Do you stand by the statement that dragging and dropping can and typically does change a value in relationally linked data?
> A. Yes.

> Q. Do you agree that that statement allows for the possibility that sometimes dragging and dropping does not change a value in relationally linked data?
> A. Yes, the sentence allows that.
> Q. And is that sentence consistent with your opinion on claim construction?
> A. It is.

*Id.* (citing Docket No. 148-1 at 73:18-74:4). CiM contends that there is no support to limit the claim term to the embodiment described in the specification and that the claim term should therefore be given its plain and ordinary meaning. Docket No. 148 at 5.

The Court finds that the term should be given its plain and ordinary meaning. P&RO has not pointed to any clear lexicography or disclaimer in the specification mandating a more limited reading of the claim term. Further, it is undisputed that the term "drag and drop" with reference to a user-computer interface is well-known and understood in the art.

Additionally, the subsequent recalculations are not described in the claim. P&RO points to the language "wherein the work orders can be moved from one work week section to another work week section, from unscheduled to scheduled, to short notice outage, to planned outage, and to backlog" in support of their limitation, but this language only describes the location of the movement, not what happens as a result of that movement.

Because the term "drag and drop" is well-known in the art and because P&RO cannot point to any clear language in the claim or specification that limits this meaning, the Court construes this term to have its **plain and ordinary meaning**.

ii. **"short notice section" and "planned outage section"**

| Claim Term | Court's Preliminary Construction |
|---|---|
| "short notice outage section" | "a portion of the user interface that displays planned outages of short duration for the purposes of performing maintenance, the 'short notice outage section' and 'planned outage section' are different sections" |
| "planned outage section" | "a portion of the user interface that displays planned outages, the 'short notice outage |

| | section' and 'planned outage section' are different sections." |
|---|---|

At the hearing, the parties agreed that the Court's preliminary construction for these terms was correct, but CiM stated that "it would also be correct and potentially helpful to the jury to note that [the short notice section and the planned outage section] are visibly separate sections." *Markman* Hr'g Tr. at 13:8–10.  CiM stated that the specification considers dragging and dropping between these sections, so the sections must be visibly separate.  *Id*. at 13:1–6.  P&RO opposed the inclusion of additional language to indicate that the two sections were "visibly separate" and stated that there is no support in the claims or the specification for its inclusion.  *Id*. at 13:25–14:5.

The Court finds that this additional language is not warranted.  The claims and the specification each consider dragging and dropping "from unscheduled to scheduled, to short notice outage plan, to planned outage plan, to backlog," '205 Patent at 2:53–55, 13:42–45, but the patent makes no mention of dragging and dropping between the short-notice outage section and the planned outage section.

Having resolved the one remaining dispute between the parties regarding these claim terms, the Court **ADOPTS** its above-identified preliminary constructions for "short notice outage section" and "planned outage section."

## CONCLUSION

For the foregoing reasons, the Court construes the claim language in this case in the manner set forth above.

# MOTION TO DISMISS

On May 24, 2016, CiM filed its motion to dismiss P&RO's Complaint on the grounds that claims 1–20 of the '205 Patent are invalid for failure to claim patentable subject matter under 35 U.S.C. § 101. Docket No. 7. In their responsive briefing, P&RO identified claim-construction disputes central to the parties' arguments on the motion to dismiss. Docket No. 26 at 5. Following the submission of the parties' claim-construction briefing, the Court allowed supplemental briefing on the motion to dismiss. Docket No. 64. The Court held a hearing on the motion on March 6, 2017. Having resolved the claim-construction disputes and having considered the briefing and the argument of the parties, the Court finds that CiM's motion to dismiss should be **GRANTED**.

# BACKGROUND

P&RO's complaint alleges that CiM infringes claims 1–20 of the '205 Patent. Docket No. 1 at 3. Claim 1 is the only independent claim of the '205 Patent, and it recites:

> 1. A planning and scheduling system running on a computing device, the system comprising:
> a user interface; and
> a computing device in communication with said user interface, said computing device being programmed to implement:
>     work week sections;
>     a scheduled job section;
>     an unscheduled job section;
>     a short notice outage section;
>     a planned outage section; and
>     work orders, wherein the work orders can be moved from one work week section to another work week section, from unscheduled to scheduled, to short notice outage, to planned outage, and to backlog, by dragging and dropping the work orders using said user interface.

'205 Patent at 13:31–46. Claims 2–20 are dependent system claims. *Id*. at 13:47–14:51.

# LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, Plaintiffs must plead facts sufficient to allow the Court to draw a reasonable inference that Defendants are liable for the alleged patent infringement. *See id*. (citing *Twombly*, 550 U.S. at 556). At this stage, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the Plaintiffs. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

The Supreme Court has established a two-part test for patent eligibility. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). In determining whether a claim is patent-ineligible under *Alice*, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* Claims directed to software inventions do not automatically satisfy this first step of the inquiry. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Rather, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

If the Court determines that the claims are directed to an abstract idea, it must then determine whether the claims contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2357. An inventive concept is "some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). The Court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (internal quotation omitted). Even if each claim element, by itself, was known in the art, "an

inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350.

## ANALYSIS

### I. *Alice* **Step One**

CiM argues that the Asserted Claims are directed to the abstract idea of "scheduling business activities using a computer and computer network." Docket No. 7 at 6. CiM contends that claim 1 recites conventional means of scheduling that are well-known in the industrial business context. *Id*. at 7. Additionally, CiM states that the specification of the '205 Patent acknowledges most industrial sites use computer programs and user interfaces for scheduling. *Id*. CiM further argues that the scheduling activities of the claim can be performed using pen and paper and that this indicates that the claims are directed to an abstract idea. *Id*. at 7–8.

Next, CiM argues that claim 1 is not directed to an improvement in computer technology. *Id*. at 8. CiM states that the specification does not identify any problems in the prior art with the functionality of a computer, but instead notes that prior art scheduling methods were "tedious and cumbersome." *Id*. at 8–9. CiM contends that the specification therefore proves that the computing device is merely a conduit for the abstract idea of scheduling business activities. *Id*. at 9. CiM argues that the claims are not directed to an improvement of a CMMS database, as P&RO contends, because the claims make no mention of a CMMS database, but requires only "a computing device." Docket No. 23 at 3–4. Similarly, CiM states that the "drag and drop" feature of the claims cannot show that the claims are directed to an improvement in computer functionality because the claims merely recite "dragging and dropping," not any improved version of the feature. *Id*. at 4.

CiM finally argues that the dependent claims do not alter this analysis, as they "merely recite slight variations" of the system of claim 1 or are directed to additional ways of using a generic computer to administer a scheduling system. *Id.*

In response, P&RO states that the claims of the '205 Patent are not directed to an abstract idea because they are "rooted in computer technology" and are directed to an improvement in computer functionality. Docket No. 12 at 10. Specifically, P&RO argues that the claims are directed to "a novel organization and management of data tables from a CMMS database, recited as dragging and dropping of work orders across multiple work week sections, which results in a complex recalculation of the relationally linked data elements of the CMMS database." *Id.* P&RO argues that the functionality of dragging and dropping work orders using the user interface provides visibility and intelligent support to the scheduling activity. *Id.* P&RO states that the claimed systems are similar to the claims found to be non-abstract in *Enfish* and provide novel methods of organizing data tables within a database. *Id.* at 11. Further, P&RO argues, the claims provide a solution for more efficient management of a CMMS systems, which is a problem only present in a networked environment. *Id.* Thus, P&RO contends, the claims are rooted in computer technology and are not abstract.

The Court finds that the claims of the '205 Patent are directed to the abstract idea of scheduling business activities using a computer and computer network. Claim 1 of the '205 Patent describes "a planning and scheduling system running on a computer" where the computer implements a schedule with work orders that users are able to move to different sections through a user interface. '205 Patent at 13:31–46. Unlike the claimed idea in *Enfish*, the claimed idea here is not directed to an improvement in computer functionality, but "represents [a] routine task[] that could be performed by a human." *See eDekka v. 3balls.com*, 2015 WL 5579840, at *4 (E.D. Tex.

Sept. 21, 2015).  P&RO claims that the invention is directed to improvements in a CMMS database, but the claims, which recite a generic computer and the generic function of dragging and dropping, are not tied to a CMMS database.  Further, as CiM notes, the scheduling practices described in the claims may be achieved using pen and paper.  Because the claims can be performed by using pen and paper or recite generic computer functionality, the claim is directed to an abstract idea.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

## II.    *Alice* **Step Two**

Because the asserted claims are directed toward an abstract idea, the Court must next determine whether an inventive concept exists sufficient to transform the claims into patent-eligible subject matter.  Such transformation requires more than simply stating the abstract idea "while adding the words 'apply it.' "  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012).  Here, the Court finds that no such inventive concept exists.

CiM argues that the limitations of claim 1, taken individually or in combination, do not contain an inventive concept.  Docket No. 7 at 9.  CiM contends that the limitations of the user interface computing device both recite generic computer limitations and do not add an inventive concept.  *Id*. at 9–10.  CiM states that the limitations directed to a weekly scheduling program with various sections cannot add an inventive concept because these scheduling limitations have long been practiced in the industrial scheduling world.  *Id*. at 10.  CiM argues that the claim's recitation of moving work orders between sections by dragging and dropping does not provide an inventive concept because the ability to re-characterize a work order is a conventional characteristic of scheduling planning and because dragging and dropping is a generic computer operation.  *Id*. at 10–11.

CiM further argues that the dependent claims do not contain an inventive concept.  CiM states that Claim 2 requires simultaneous display of scheduled and unscheduled jobs, which is a

conventional way of displaying weekly schedules, and claims 3, 4, and 20 add only limitations about tracking resources, such as manpower availability, which are a necessary and expected feature of scheduling. *Id*. at 13. CiM also contends that claims 6, 5, and 7 each only add color coding, which has long been used in scheduling. *Id*. CiM further argues that claims 8 through 16 all add limitations that are directed to generic computer or user interface operations, which cannot add an inventive concept. *Id*. Finally, CiM states that claim 17 requires assigning specific dates and times of an assignment to each work order, while claims 18 and 19 add limitations for tracking emergent and sponsored work, and argues that these limitations are all conventional scheduling concepts. *Id.*

In response, P&RO contends that the claims of the '205 Patent contain an inventive concept because they address a computer-specific problem and provide a specific solution to that problem. Docket No. 14 at 12. P&RO states that the claims disclose improved systems for manipulating CMMS data tables by adding the functionality of dragging and dropping work orders between sections in the user interface. *Id*. at 13. P&RO argues that the presence of dragging and dropping in the prior art is irrelevant to the § 101 analysis and that no abstract idea is monopolized by the claims because they are limited to CMMS systems performing a particular method of data manipulation. *Id*. at 13–14.

P&RO further contends that the claims of the '205 Patent disclose features that are not well-understood, routine or conventional. *Id*. at 14. P&RO argues that the dragging and dropping of work orders across multiple work-week sections is a non-conventional limitation because it results in extensive recalculation of CMMS data tables to effectively allocate resources. *Id*. at 15. P&RO further states that, as noted in the specification of the '205 Patent, prior-art systems managed work orders by manual entry. *Id.* at 16. P&RO argues that this disclosure "provides

convincing evidence that the claimed dragging and dropping and automatic resource allocation of work orders was not conventional activity in work order management at the time of the invention." *Id.* Finally, P&RO argues that the claims are presumed valid, and that CiM has not provided any substantive argument to overcome that presumption as to the dependent claims. *Id.*

The Court finds that none of the limitations of the claims of the '205 Patent provide an inventive concept. The first limitation of claim 1 requires a user interface and a computing device in communication with the interface. '205 Patent at 13:33–36. This limitation does not provide an inventive concept, as it recites generic computer components. *See Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016). Next, the claim recites various interface sections, such as "work week sections" and "short notice outage sections." '205 Patent at 13:37–41. These limitations similarly fail to add an inventive concept because they merely collect and display scheduling information. *See Electric Power Group LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("[M]erely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental process . . . ."). The final limitation of claim 1 requires work orders to be dragged and dropped between the sections. '205 Patent at 13:42–46. P&RO contends that the dragging and dropping limitation provides an inventive concept because it results in a complex recalculation of CMMS data tables. However, the Court has construed "dragging and dropping the work orders" to have its plain and ordinary meaning, and nothing in the claim indicates that the dragging and dropping here is anything other than the conventional, well-known computer function. *See supra* pp. 6–8; *see also* Docket No. 54-3 at 7. Thus, the limitation does not add an inventive concept. Further, because the combination of these limitations simply uses a generic user interface and computer to implement the abstract idea, it does not add an inventive concept. *Alice*, 134 S.Ct. at 2359.

Finally, the dependent claims also fail to add an inventive concept. Claim 2 adds the limitation of concurrently displaying sections, which is a generic computer function. *See Electric Power Group*, 830 F.3d at 1355. Claims 3–4 and claim 19 provide limitations for real-time calculating and resource loading. These too are basic computer functions. *See Alice*, 134 S. Ct. at 2360. Claims 5–7 add color-coding limitations, which do not provide an inventive concept. *See In re Ockman*, 833 F.2d 1023 (Fed. Cir. 1987). Claims 8–11 and claim 15 each include limitations reciting generic computer functions that also do not add an inventive concept, such as networking the computing device with a database server and programming the computer device for different generic functions. Claims 12–13 add limitations relating to configurability, which is not an inventive concept. *See Affinity Labs of Texas, LLC v. Amazon.com Inc*., 838 F.3d 1266, 1272 (Fed. Cir. 2016) ("The addition of basic user customization features to the interface . . . does not add an inventive component that renders the claims patentable.") Finally, claims 14, 17–18, and 20 each add limitations relating to the scheduling of work orders. These limitations do not add an inventive concept, as they merely call for the use of a generic computer to implement the abstract idea. *See Alice*, 134 S. Ct. at 2360.

Because each of the claims of the '205 Patent is directed to an abstract idea and does not contain an inventive concept, the Court concludes that the claims fall outside the scope of patentable subject matter defined by § 101.

## CONCLUSION

For the reasons listed above, the Court finds that the claims of the '205 Patent are drawn to ineligible subject matter under 35 U.S.C. § 101. Accordingly, it is

**ORDERED** that CiM's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101 (Docket No. 7) is hereby **GRANTED**. It is further

**ORDERED** that all claims asserted by Plaintiffs in this case are hereby **DISMISSED WITH PREJUDICE**.  The Clerk is directed to close the case.

**SIGNED this 31st day of March, 2017.**

*Robert W. Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE